IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TIMOTHY MORTON                                                                           PLAINTIFF

V.                                                              CIVIL ACTION NO.1:12CV28-SA-DAS

COOPER TIRE & RUBBER COMPANY                                                  DEFENDANT

MEMORANDUM OPINION AND ORDER

1. INTRODUCTION

Timothy Morton, who has a below the knee amputation and wears a prosthetic leg, was hired by Cooper Tire in a utility position in the Material Prep area of its Tupelo, Mississippi facility and was training in the Twin Two Calendar line. He claims they were unaware of his disability when they hired him. Unsatisfied with Morton's productivity, Cooper Tire allowed him to resign in lieu of termination.

This suit under the Americans with Disabilities Act, 41 U.S.C. § 121, et seq., ensued. The plaintiff claims that Cooper Tire constructively discharged him and failed to provide reasonable accommodation in violation of the ADA. He claims that he could do the job if allowed a couple of ten-minute breaks to adjust the prosthetic leg per twelve hour shift. The defendant alleges the plaintiff requested several thirty minute breaks, which it asserts is not a reasonable accommodation. It is Cooper Tire's position that the plaintiff is unable to perform the essential functions of his job.

The plaintiff requested an inspection of the Tupelo plant to photograph the machine on which he worked during his employment and to videotape a Cooper Tire employee operating the

1

machine to show the physical demands of operating the machinery. Cooper Tire refused, contending both that its trade secrets will be compromised and that the discovery has little or no relevance to the issues in the plaintiff's case. It has moved for a protective order [17] seeking to prohibit the requested discovery. The plaintiff has responded with a motion to compel [25]. The plaintiff is agreeable to the entry of a protective order limiting access to discovery materials and asserts such an order will be sufficient to protect the defendant's interest.

The court has considered the motions, responses, briefs and exhibits and finds as follows:.

2. <u>Trade Secret Protection and the Burdens of Proof</u>

Rule 26 (c) of the Federal Rules of Civil Procedure provides that a party from whom discovery is sought may move for protective order and that the " court may, for good cause, issue an order to protect the party ... from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c) Where information sought is "a trade secret or other confidential research, development, or commercial information," the court may order either that the information "not be revealed, or be revealed only in a specified way." Fed. R. Civ. P. 26 (c)(G). The comments to this rule acknowledge the limited protection provided under the rules for this category of information. "The courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure. Frequently they have been afforded a limited protection." Fed. R. Civ. P. 26(c) cmt (citing *Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993 (10th Cir. 1965) and *Julius M. Ames Co. v. Bostitch*, *Inc*., 235 F. Supp. 856 ( S.D. N.Y. 1964). "There is no true privilege against discovery of trade secrets or other 'confidential' business information, but the

2

courts nevertheless, will exercise their discretion to avoid unnecessary disclosure of such information, particularly where the action is between competitors...." *A.H. Robins Co. v Fadely*, 299 F.2d 557, 561 (5th Cir. 1962). This court ultimately must weigh and balance the right of Cooper Tire to protect its trade secrets and the potential harm to it against the plaintiff's need to discover the information.

When a party argues its trade secrets are at risk, the court imposes a scheme in which the burdens of proof shift between the parties. First, the burden to prove that data or other discovery materials sought constitute trade secrets lies with Cooper Tire, as the party seeking a protective order. *M-1 LLC v. Stelly*, 733 F Supp. 759, 801 (S.D. Tex. 2010). Cooper Tire also bears the burden to show that disclosure of the trade secrets "would cause an identifiable, significant harm." *Id.* at 801 (quoting *Stone Connection Inc. v. Simpson,* 2008 WL 1927033 at *1 (E.D. Tex. Apr. 28, 2008). If Cooper Tire meets this burden, the plaintiff must then "'establish that the information is sufficiently relevant and necessary' to its case to outweigh the harm that disclosure may cause." *Id.* at 802 (quoting *8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2043* (2d ed. 1994)).

Finally, the court must balance the interests of the parties and consider all the pertinent circumstances, including any danger that the discovered information may be abused; whether the party is seeking the discovery in good faith; and whether there are reasonable alternatives that do not involve the disclosure of trade secrets. "[I]f the information sought is shown to be relevant and necessary, proper safeguards will attend disclosure." *8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2043* (3rd ed. 2010).

Here the specific request made by the plaintiff is "that the Defendant permit Plaintiff and

his attorney to inspect, photograph and video-record the 'Two Twin Calendar'/ 'Twin Roller Machine' job function as performed by the Plaintiff during his employment at the Tupelo, Mississippi facility."

    3. Cooper Tire's Trade Secrets Showing

    Cooper Tire argues that the plaintiff should not be allowed to photograph or videotape the machine with which he worked during his employment, arguing that multiple trade secrets – not just those in the Material Prep area and/or in connection with the specific machine – will necessarily be revealed by any inspection.

    A trade secret "may consist of any formula, pattern, device or compilation of information, which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Cataphote Corp. v. Hudson*, 422 F.2d 1290, 1293 (5th Cir.1970) (*Cataphote 1*).  The definition also encompasses manufacturing processes.  *Id.* The information or processes need not be so unique or novel as to be patentable, but the subject matter must in fact be a secret.  *Id.*

> An item or process of public or general knowledge in an industry cannot be appropriated by one as [one's] own secret.'  Where a process or idea is so common, well known or readily ascertainable that it lacks all novelty, uniqueness and originality, it necessarily lacks the element of privacy necessary to make it legally cognizable as a trade secret.  *Cataphote Corp. v. Hudson*, 444 F.2d 1313, 1315-16 (5th Cir. 1971)(*Cataphote 2*) (quoting *Cataphote 1* at 1293*).*

Even if there is an express confidentiality provision, where either a process or machine is shown to be generally known to the trade, there is no protectible trade secret.  *Cataphote 2* at 1316. Because trade secrets, unlike patents, are not attended by any presumptions, Cooper Tire must prove that the items claimed as trade secrets involve "some elements above ordinary mechanical

commonality and is something not already known to the public or to the trade generally."

*Cataphote 2*, at 1315-16.

Has Cooper Tire shown that the discovery will reveal trade secrets? Cooper Tire has submitted the six page affidavit of Brian P. Weibel, the plant engineer at its Tupelo facility in support of its motion for a protective order. The affidavit is attached as an addendum to this opinion. The affidavit is divided into four parts:

> 1) A catalogue of various machines and processes used at the Tupelo plant;
> 2) The steps taken by Cooper Tire to safeguard the privacy of the Tupelo operations;
> 3) Examples of the presence and dangers of industrial espionage within the tire industry; and
> 4) Cooper Tire's reasons why the proposed inspection would be unduly burdensome and could cause irreparable harm to the company.

The first section catalog does not limit itself to the subject machine for which inspection is sought, but also catalogues different areas, other machinery and other processes employed throughout the Tupelo plant. Cooper Tire uses various "unique manufacturing processes that are the result of innovations designed by Cooper Time alone." ¶ 6. Cooper Tire claims that the subject machine "is a process that Cooper Tire has modified since it purchased the equipment to fit Cooper Tire's unique plant layout and tire manufacturing process. The unique details related to this machine are not believed to be known outside of Cooper Tire." ¶ 6 (a). In addition to the subject machine, the affidavit refers to a "unique tread extruder" modified by Cooper Tire to suit "its unique plant layout and tire manufacturing processes," ¶ 6(b); "an automatic tread booker system, similar only to its sister plant in Texarkana;" ¶ 6(c); and a "steel-belt cutting system" modified by the defendant to "fit exclusively into its manufacturing process" and is now "unique to Cooper Tire." ¶ 6(d).

Cooper Tire's second stage tire manufacturing process was developed by Cooper Tire

from "scratch" representing an investment of millions of dollars and many years; ¶ 6(e). It employs a unique process "to assess the green tire before curing" in order to make the curing process "substantially more efficient" resulting in "enhanced plant productivity." The tire industry highly competitive and depends heavily on "innovative research and development in plant efficiency." ¶ 6(f). Cooper Tire also employs a "unique bead processing machine" that it has taken "years to develop and refine." ¶ 6(g). "While the machinery was originally purchased from a vendor, Cooper Tire has modified and improved it to make it unique to its manufacturing process." *Id.*

Cooper Tire's first stage tire building machines were also purchased from a vendor but "Cooper Tire provided proprietary input such that the machines are unique" to its production process. ¶ 6 (h). It also "worked with a product manufacturer to develop exclusive mixing process controls" specifically for its exclusive use. ¶ 6(j). Cooper Tire has "recently developed innovative processes related to the use of molds for tires" in larger tire sizes in the Tupelo plant, ¶ 6(h) and its overall tire building processes and machines have been developed over a long period of time at considerable expense to Cooper Tire. Because tire manufacturers face similar raw materials costs, efficiencies in the manufacturing processes are crucial to a company's competitiveness. ¶ 8.

The second segment of the affidavit addresses the secrecy provisions used by Cooper Tire to shield its manufacturing operations from the eyes of its competitors. These steps include physically securing the plant facilities, limiting access by non-employees and requiring all employees to sign confidentiality agreements prohibiting disclosure of information about the company during and after employment with Cooper Tire. ¶ ¶ 9-15. The plaintiff is subject to

such a confidentiality agreement. The court is satisfied that Cooper Tire has taken steps to keep its processes and machinery secret.

The third section sets out Cooper Tire's concern that it may be the victim of industrial espionage from within the tire industry. It cites two incidences of such espionage involving other companies and a recent attempt by one of its competitor's to obtain pricing, sales practices, and other information about Cooper Tire's business practices from it customers. ¶ 16.

In the final section of the affidavit, Cooper Tire asserts that any plant inspection "would compromise and completely frustrate the fundamental security system" that Cooper Tire has in place to protect its trade secrets (¶ 17). Because the subject machine can only be accessed by passing through other areas of the plant and "[t]he highly proprietary and trade secret manufacturing processes and practices ... cannot be hidden,"¶ 18, Cooper Tire argues no "limited" inspection can be done. The affidavit then suggests that its "invaluable trade secrets" create a potential for profit that "might tempt even the most honest person." ¶ 19. Cooper Tire argues it will be substantially burdened because any inspection would necessitate either a shut down or limiting production and "[t]he financial impact and effect on production of an inspection would be tremendous." ¶ 20. Cooper Tire's affidavit complains that if photographs or video are taken "it would be impossible for Cooper Tire to control the negatives or the number or distribution of prints from those negatives. ¶ 21.

4. <u>Plaintiff's showing of relevance and 'necessity'</u>

Assuming that Cooper Tire has met its burden of showing that the information sought by the plaintiff qualifies as a trade secret or secrets, the burden then shifts to the plaintiff to show his legitimate need for discovery of the protected information.   Referring to *M-1 LLC v. Stelly*, 733 F Supp. 759 (S.D. Tex. 2010)*,* Cooper Tire argues that the plaintiff must show both that the information sought is relevant and that it is ***necessary*** to the plaintiff's case.  It would have the court impose a much heavier burden on the plaintiff than is generally applicable to discovery requests.  The cited case, *M-1 LLC* applied Texas law, not federal law, in making its determination to grant or deny discovery.  Texas law, per *M-1,* provided a "trade secrets" privilege against discovery.  The federal district court noted the similarity of language between federal and state law, but applied Texas' apparently more protective standard.  This of course would be consistent with the Texas privilege.  In *M-1* the Texas standard required the plaintiff "to establish that the information would be necessary to its experts rather than merely useful...." *Id.* at 804.

The federal standard while using the same "relevant and necessary' language does not provide as high a barrier to discovery as the Texas standard, nor as high a threshold as that language itself suggests at first blush.  The plaintiff is not absolutely required even to show that trade secret discovery will be admissible at trial*. 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2043, p. 251* (3d ed. 2010).  In fact in "most cases the key issue is not whether the information will be disclosed but under what conditions, as the Supreme Court has recognized.  The need for the information is ordinarily held paramount but reasonable protective measures are supplied to minimize the effect on the party

making the disclosure." *8 Charles Alan Wright, Arther R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2043, p.252* (3d ed. 2010). Orders prohibiting "any disclosure of trade secrets and confidential commercial information are rare." *Federal Open Market Comm. of the Fed. Reserve Sys. v Merill*, 443 U.S. 340, 363 n. 24 (1979). A showing of general relevancy and of need has been held sufficient to require the disclosure of trade secrets. *Covey,* 340 F.2d. at 997.

The plaintiff asserts that viewing the machine and being able to show the machine in operation will be critical to his proof that he was capable of performing the essential functions of his employment. Cooper Tire has argued that testimony about the machine and its documentation of the physical requirements for operating the machine are sufficient for the plaintiff's purposes. Cooper Tire also argues that the requested discovery is not relevant. It offers its internal documents, including one that provides: "It was agreed upon that Tim could not do the job and there was nothing Management would be able to do to help him." Whatever these documents may prove, there is a clear dispute between the parties about the accommodation requested and a disagreement about the plaintiff's physical capacities in this lawsuit. In order to prevail at trial, the plaintiff must demonstrate that he had the ability to perform the job. A jury considering this area would obviously be aided by photographs of the machine and video of it being operated.

While it is true that various witnesses could testify to the description of the machine and the physical demands of the job plaintiff held, the testimony would apparently need to be more extensive and time consuming than a display of the machine in action. Word descriptions of the function and demands of this job would clearly be inferior to the direct proof the plaintiff seeks.

9

The most compelling cross-examination for any witness who might attempt to twist the truth to exaggerate either the ease or the difficulty of this job would be an accurate video depiction of the work being performed.

After considering the matter, it is clear that testimony is not a reasonable substitute for pictures and videotape of the machine at issue. Failure to provide the requested discovery will prejudice the plaintiff in preparation for trial and at trial.

5. The balancing test

Finally, the court must analyze the showings made by the parties and determine whether and under what circumstances discovery will be allowed.

The court has paid particular attention to the cases cited by Cooper Tire in which they and other tire manufacturers have successfully opposed plant inspections. These cases and the rationales employed by the courts are instructive, but because each of these cases is factually dissimilar to this case, they are ultimately not helpful to the Cooper Tire's position.

In some of the cases, too much time had passed from the date of injury to the date of the request. In *Murphy v. Cooper Tire & Rubber Company*, No. 5:08cv40, the federal district court in Florida rejected the plaintiff's bid to have counsel and experts inspect Cooper Tire's Findlay, Ohio plant in a products liability, wrongful death case. The subject tires in that action were no longer manufactured by Cooper Tire, and the plant itself had been modified such that the plant "does not currently reflect the manufacturing conditions and processes that existed " when the subject tire was manufactured. Because anything discovered was "only marginally relevant – at best," and would include disclosure of an entire facility, the inspection was denied. *Id.* at 5.

Likewise in In *Daughtry v. Cooper Tire*, (Circuit Court of the Fourth Judicial District of

Florida, Duval County, No 16-2006-CA-4574), the Florida state court addressed a wrongful death arising from a tire blowout. Cooper Tire manufactured the tire in 2002 and the defendant requested the inspection in 2007. The court did not order inspection the Cooper Tire because of "significant changes since" 2002 "including the use of new equipment, modifications of the physical layout and changes in the stages of the manufacturing process." *Id.* at 2. This inspection, the court found "would indeed expose Cooper's trade secrets and be of modest value" to the plaintiff's case.

In *Williams v . Daihatsu*, 3-01-184-D (D. Tex.March 21, 2002), the court denied a motion in which a plaintiff sought permission for their expert to inspect any portion of a tire plant. The tire at issue had not been manufactured for five years prior to the requested inspection and "the production methods currently employed" at the subject plant were "unlikely to replicate the production methods used when the tire in question was manufactured" six years earlier. *Id.*

In other cases the plaintiff sought carte blanch inspection and videotaping of the entire manufacturing process. In *McCloud v Goodyear Dunlop Tires North America, LTD,* 2006 WL 533408 (C. D. Ill. March 3, 2006), the plaintiff requested an overall inspection and wanted to videotape the entire manufacturing process. Finding that for reasons "adequately demonstrated at the hearing," the process of manufacturing was not so complex that a jury would need or be aided by a video of the process, and finding that the resulting disclosure of trade secrets would be damaging to the defendant, the court found "the minimal showing of need for this film is significantly outweighed by the interest of the defendants in protecting its trade secrets." *Id.* at *1. In yet another products case, the Texas Court of Appeals, issued a mandamus to prohibit the "plaintiff's counsel, one expert and a videographer" from entering, inspecting and photographing

11

"the Charlotte plant, machinery, and the entire process by which tires are built, stored, and shipped, from the beginning to the end." *In re Continental Tire North America, Inc.*, 74 S.W.2d 884, 885 (Tex. Ct. App. 2002).

6. The Scope of Inspection

Ultimately because this is an ADA case and not a products liability case and because the requested inspection is for a limited part of the plant and for a limited purpose the above cases do not support a prohibition of the discovery. Indeed, that this is not a products liability case is far and away the most compelling reason to allow the access sought by the plaintiff. The plaintiff is attempting only to show he could operate the machine at issue despite his disability. The intricacies as to how *the machine* ultimately performs will be of little relevance either to the experts or the jury. The only matter at issue is whether the plaintiff is able to operate it or not.

The court rejects Cooper Tire's arguments in response to the request and in support of its motion for a protective order for a variety of reasons. First and foremost, the plaintiff is not seeking any discovery about any other area, machine or process. Because this is not a products liability case and Cooper Tire's manufacturing process – except on the machine in question – is not at issue here, no expert in tire manufacturing is proposed to inspect or have access to the plant. Nor is there any demonstrated expectation that such an expert will appear or have access to the discovery materials. This is not a suit by a competitor who might have ulterior motives for seeking discovery. This also means that no one with the expertise to recognize, evaluate and appreciate the significance of trade secrets in other areas of the plant will be involved in the inspection. The plaintiff is already bound by a confidentiality agreement. To the extent that he can discern when he is observing a Cooper Tire trade secret in its other processes and machinery,

he presumably has already done so and is unlikely to have any new, substantial insights from walking back into the plant. Plaintiff's counsel is willing to be subject to a protective order and has not asked for information about other machines and processes. The court has been shown nothing that makes it believe other 'trade secrets' are put at risk by the plaintiff and his attorneys walking past or through other areas of the plant. The court has no reason to believe that Cooper Tire's secrets, no matter how plainly visible to those with expertise, will be revealed by a walk through. The court does not agree that trade secrets outside of the material prep area and the subject machine will be placed in jeopardy of discovery because the plaintiff and his attorney will be allowed to walk through areas adjacent to the subject machine.

It therefore appears that any 'trade secret' that could reasonably be discoverable by the proposed inspection and photography would realistically be limited to the Twin Two Calendar machine. With regard to this machine, Cooper Tire's affidavit provides the following:

> The Twin Two Calendar line that Plaintiff was training on at the time of his employment with Cooper Tire is a process that Cooper Tire has modified since it purchased the equipment to fit Cooper Tire's unique plant layout and tire manufacturing process. The unique details related to the machine as it is incorporated into the Tupelo plant are not believed to the be known outside of Cooper Tire.

While the language is somewhat ambiguous, it does not appear that the machine itself has been modified but rather that Cooper Tire has 'uniquely' incorporated purchased machinery into its manufacturing process. This interpretation is strengthened when the vague language used regarding the subject machine is compared with the language used regarding other machines in which there was 'proprietary input' by Cooper to the manufacturer of the machine and another instance in which Cooper Tire "worked" with a manufacturer to obtain a unique machine for

mixing controls. The court finds that Cooper Tire has failed to show how a limited inspection and photography will reveal the "unique incorporation" of the machine within its overall process. The court also does not accept the contention that a full or partial work stoppage will be necessary and finds that the limited intrusion into its plant can be accomplished without undue burden or expense to Cooper Tire.

Because the plaintiff has agreed to the same and because reasonable precautions are appropriate to assure that these materials are used only for the purposes of this litigation and access is restricted, a protective order should be entered.

IT IS, THEREFORE, ORDERED as follows:

1. Plaintiff's motion to compel the inspection and photography of the Twin Two Calendar /Twin Roller machine is granted. Cooper Tire shall arrange for the inspection of the machine by the plaintiff and his attorney(s) at a time mutually convenient to the parties within twenty-one days of this order. Plaintiff shall be allowed to videotape the machine being operated by a Cooper Tire employee and to take photographs of the machine.

2. Cooper Tire's motion for a protective order to prohibit the discovery is denied, but the court finds that making this discovery subject to a protective order is appropriate.

3. All photographs, videography or any information gathered as a result of the inspection shall be deemed confidential and subject to the following terms and conditions. A copy of all photographs and video shall be provided to Cooper Tire for its review.

a. Unless otherwise ordered by the Court, access to confidential material shall be limited to authorized persons. Authorized persons include:

(1)     Counsel of record for the parties to this civil action;

14

(2)     Paralegal, secretarial, administrative, and legal personnel working under the direction and control of those counsel of record and who have consented in writing to this Protective Order of Confidentiality;

(3)     Outside experts and consultants retained by counsel of record who have first consented in writing to be bound by this Protective Order of Confidentiality.

(b) Unless otherwise ordered by the Court, access toconfidential material shall not be given to any person or entity not described above, including to members of the general public, without the express written consent of Cooper Tire.

(c) If any subpoenas, requests for production, or other forms of discovery in connection with other litigation are served on any party to this Protective Order of Confidentiality, or any authorized person defined hereunder, that party will notify counsel of record and will provide the opposing party's counsel with a copy of the subpoena or other discovery request.

(d) All photographs and videos, including all copies,  shall be used only for the purposes of this litigation and shall be either destroyed by counsel or returned to Cooper Tire following the final conclusion of this litigation.

SO ORDERED this the 10th day of December, 2012.


/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE