IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TIMOTHY MORTON                                                                                    PLAINTIFF

V.                                                                          CAUSE NO.: 1:12CV028-SA-DAS

COOPER TIRE & RUBBER COMPANY                                                        DEFENDANT

MEMORANDUM OPINION

Plaintiff brings this case under the Americans with Disabilities Act (ADA) claiming that Cooper Tire & Rubber Company terminated him because of his disability after they failed to make reasonable accommodations. Cooper Tire has filed a Motion for Summary Judgment [45] seeking dismissal of this case. Because genuine disputes of material fact exist, that motion is denied.

*Factual and Procedural Background*

Plaintiff Timothy Morton was hired as a utility worker in the material prep department at Cooper Tire in Tupelo, Mississippi. Prior to being hired, Morton acknowledged that he understood the responsibilities of the position he accepted. The job description indicated that the utility worker would be required to lift and carry products weighing 50-75 pounds repeatedly over a twelve hour work period and required walking or standing most of the time during the twelve hour shift, and included stooping, crawling, and crouching around and over equipment. Additionally, the utility worker's responsibility was to "[o]perate manufacturing equipment efficiently and safely."

Because the utility workers are used to fill in as needed around the plant, each utility is trained to work in three to six positions, one of which is the Twin-Two Calendar windup position. The Twin-Two Calendar machine produces a thin rubber lining that is used in all of

Cooper's products. The machine is operated by four employees – two men per twelve hour shift, one as the windup and the other as the operator. The windup worker is responsible for replacing spools – both empty and full - on the Twin Two Calendar machine, a process which repeats itself every two to two and half minutes. The empty spools weight approximately forty-five to sixty pounds, while the full spools weigh close to two hundred pounds. A hoist is available to help the windup worker remove the full spools and place them on the racks. Before moving on to train at another position, the utility worker must be able to "keep pace with the machine" unassisted for a full twelve hour shift. Because financial incentives are provided to the operator and windup for production each shift, the machine often runs twenty-four hours a day but can be shut off by the Twin-Two Calendar operator.

Timothy Morton commenced his employment on March 21, 2011 and started his utility training at the Twin-Two Calendar windup position. Morton was assigned a trainer for each shift, Bud Ford and Ronnie Westmoreland, who taught him the position and aided him during his training. Morton was never able to work a full twelve hour shift without help from his trainer. On April 9, 2011, Morton informed his supervisor, Ray Cranford, that he was a below-the-knee amputee with a right prosthetic leg. According to Cranford, Morton indicated that his prosthetic leg and his age were making it hard to keep pace with the machine. In anticipation of his thirty day review coming up, a meeting was held with Morton on April 18, 2011 because he had not been able to perform the Twin-Two Calendar windup job without help for a full shift. According to Cranford, the average time it takes for a utility worker to master the Twin-Two Calendar windup position was two weeks. The notes taken at the April 18 meeting state that Morton claimed his leg was the reason he was not able to perform the position and that there was nothing Cooper Tire could do to make it possible for him to perform the job unaided for a full twelve

hour shift. At his thirty day performance evaluation, Morton allegedly informed Cranford that to perform the job, he would need several thirty minute breaks a day.

Morton claims he never requested several thirty minute breaks, but only asked for a ten to fifteen minute break in the beginning of his shift, a thirty minute lunch break, and a ten to fifteen minute break toward the end of his shift. These breaks, Morton stated, were necessary to readjust his prosthesis as sweat causes the prosthetic to rub his skin and cause blisters and sores. Morton claims that initially, he was given those limited breaks so that he could readjust his prosthesis. However, he asserts that later he was unable to take breaks later causing blisters and sores on his leg. He was transferred to a trucking position for a few days in late April and asked to resign on May 3. At the meeting held with the material prep foreman, his immediate supervisor, and the Plant HR Manager, Morton allegedly indicated that there was nothing that Cooper Tire could do to accommodate him. He asked to be transferred to another job; however, Cooper Tire utilizes a seniority system allowing transfer by bid only after being employed for one year. When asked if he would rather resign or be terminated, Morton chose to resign for "personal reasons."

Morton filed his charge with the EEOC for disability discrimination on May 17, 2011. After receiving his right to sue letter, Morton filed this lawsuit in federal court alleging that Cooper Tire terminated him because he was disabled and failed to accommodate his disability in violation of the ADA. Cooper Tire has filed a Motion for Summary Judgment asserting that Morton has not brought forth enough to satisfy his prima facie burden for each claim.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals there is no genuine dispute regarding any material fact and

that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The court is only obligated to consider cited materials but may consider other materials in the record. Id. at 56(c)(3). The court must resolve factual controversies in favor of the nonmovant "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Discussion and Analysis*

1. <u>Disability Discrimination</u>

The ADA prohibits discrimination of the basis of an employee's disability. 42 U.S.C. § 12112(a). The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures . . . discharge of

4

employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To sustain a claim for disability discrimination, Morton must provide evidence sufficient to make out a prima facie case. To prevail on his ADA claim, Plaintiff must establish that (1) he has a disability; (2) he is qualified for the position in which he was employed; and (3) he was discriminated against because of his disability. Griffin v. UPS, 661 F.3d 216, 222 (5th Cir. 2011); Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007).

Defendant concedes that Plaintiff has a disability; however, Cooper Tire contests whether Morton was qualified for the position and that he was discriminated against because of his disability. "[Under the ADA,] it is the employee's burden to prove that he is a qualified individual with a disability . . . ." Rizzo v. Children's World Learning Ctrs., Inc., 213 F.3d 209, 218 (5th Cir. 2000). A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A plaintiff must show either that "(1) he could perform the essential functions of the job in spite of his disability, or (2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." Burch v. City of Nacogdoches, 174 F.3d 615, 619 (5th Cir. 1999); see Appel v. Inspire Pharms., Inc., 428 F. App'x 279, 284 (5th Cir. 2011) ("An employee who cannot perform essential job requirements, even with accommodation, is not a qualified person with a disability."). The parties do not dispute that working the Twin-Two Calendar unassisted for an entire shift was an essential function of the utility worker position. Accordingly, the question becomes whether Morton could have performed the job with or without an accommodation.

The Court first notes that the parties disagree on the accommodation requested by Morton. Cooper Tire asserts Morton requested "several thirty minute breaks" throughout his

5

shift. Morton asserts that he could perform the essential functions of the job if he had been allowed to take a short break at the beginning of his shift, a thirty minute lunch break, and a short break toward the end of his shift. Cooper Tire contends that the limited number of short breaks was given, and despite the accommodation, Morton was still unable to do the job by himself. Robert Strickland, Morton's shift leader, noted that Morton could not keep up with the machine, with or without the requested breaks. Morton claims that he could do the job as long as he was afforded breaks.

Morton confirmed that initially he was able to take the needed breaks. After the first two weeks, in order for him to take a break, Morton testified that someone else who could perform the windup function had to cover the position while he was on break. Morton asserted that instead of receiving a break for lunch, he had to eat at his machine. He further remarked that when he informed his supervisor that he needed to take breaks, Cranford replied that on that machine, breaks were not usually given, that he would have to talk to the operator, but if the operator did not want to break, then there was no break.

Morton noted that he "never got fully trained and released on [his] own." However, he testified that within a week, he was able to perform the windup function all shift except for during the breaks. He acknowledged that he could only keep pace with the machine for eight hours at most without help from the trainers.

While Plaintiff admits that he was never released from training, and was not able to run the machine a full shift unassisted, he did claim to have worked the machine continuously without a break for four hours. He stated that with a break, he could have functioned the entire shift. Morton has thus raised a triable issue concerning his ability to perform the essential functions of the job with or without any accommodations.

Defendant point to Moore v. Nissan North America, Inc., 2012 WL 2608792 (S.D. Miss. July 5, 2012), as indicative of the course the Court should take. In that case, Moore was employed by Nissan as a Production Technician. He was later diagnosed with multiple sclerosis, took leave, and was terminated when his leave expired. The only disputed prong of Moore's ADA case was whether he was qualified for the job in question. Id. at *4. The position Moore was discharged from was a physically demanding job, his disability caused physical limitations, and those limitations prevented him from performing the essential functions of his Production Technician position. Moore requested accommodations of a stool and the ability to take "frequent" two to three minute breaks during his shift. Id. at *9. The court found that the requested "frequent" breaks would not resolve the limitations recommended by Moore's own physician. Id. Thus, Moore could not perform the essential functions of his position with or without reasonable accommodation. Id. Here, there is no evidence that Morton is physically limited by his prosthetic leg. His only need is to be able to readjust his prosthetic leg every so often so that it does not break his skin or fall off. Therefore, if Plaintiff were given the breaks he requested, the issues involved with his prosthesis may be resolved, whereas, Moore's physical limitations would not be absolved by breaks during his shift. The Court finds the Moore case distinguishable for these reasons.

Defendant further argues that Plaintiff cannot show that he was terminated because of his disability. However, Plaintiff was asked to resign for failing to complete training on the Twin Two Calendar windup position which may have been able to be accomplished had he been given the requested breaks. There exists questions of fact sufficient to be heard by a jury. Accordingly, summary judgment is not appropriate on this claim.

2. <u>Failure to Make a Reasonable Accommodation</u>

Under the ADA, to "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "An employee who needs an accommodation because of a disability has the responsibility of informing her employer." <u>EEOC v. Chevron Phillips Chem. Co., LP</u>, 570 F.3d 606, 621 (5th Cir. 2009). The Fifth Circuit has recognized that "'where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.'" <u>Id.</u> (quoting <u>Taylor v. Principal Fin. Grp.</u>, 93 F.3d 155, 165 (5th Cir. 1996)). "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." <u>EEOC v. Agro Distrib.</u>, 555 F.3d 462, 471 (5th Cir. 2009). "The ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." <u>Id.</u> "A disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received previously." <u>Jenkins</u>, 487 F.3d at 316. "The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform." <u>Id.</u> at 315.

To prevail on a claim of discrimination based on failure to accommodate a disability, the plaintiff must show that (1) the employer is covered by the statute; (2) he is an individual with a disability; (3) he can perform the essential functions of the job with or without reasonable

8

accommodation; and (4) the employer had notice of the disability and failed to provide accommodation. Mzyk v. North East Indep. Sch. Dist., 397 F. App'x 13, 16 n.3 (5th Cir. 2010) (citations omitted). The plaintiff has the burden to show that the employer failed to implement a reasonable accommodation. Riel v. Elec. Data Sys. Corp., 99 F.3d 678, 682 (5th Cir. 1996).

As noted above, there is a genuine dispute of material fact as to whether Plaintiff could perform the essential functions of the job with the limited breaks he allegedly requested. Thus, Plaintiff's claim as to the limited breaks accommodation is proper for a jury. However, to the extent that Plaintiff now suggests that Cooper Tire could have accommodated Morton by training him on the other functions of a utility worker, or reassigning job duties to keep him employed, the Court finds such accommodation waived. See Cutrera v. Bd. of Supervisors of La. State Univ., 429 F.3d 108, 112 (5th Cir. 2005) (holding that it is a disabled individual's responsibility to request an accommodation); Burch, 119 F.3d at 314 ("[a] wrongful termination claim under the ADA is not properly analyzed under a reasonable accommodation theory unless an employer is shown to have terminated a qualified individual with a disability in order to avoid accommodating that employee's impairments at the workplace."); Foreman v. Babcock & Wilcox Co., 117 F.3d 800, 810 (5th Cir. 1997) ("[An employer is] not . . . obligated to accommodate [a disabled employee] by reassigning him to a new position. '[W]e do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment discrimination against qualified individuals with disabilities, no more and no less." (quoting Daugherty v. City of El Paso, 56 F.3d 695, 700 (5th Cir. 1995))). Morton admittedly never requested a transfer to another machine commonly worked by a utility

worker. Thus, Cooper Tire never addressed this accommodation and cannot now be held to have discriminated against Morton for failing to grant the unrequested accommodation.

*Conclusion*

Morton has put forth a genuine issue of material fact as to whether he was a qualified individual pursuant to the ADA had he been allowed to take the requested accommodation of a ten to fifteen minute break in the beginning of his shift, a thirty minute lunch break, and a ten to fifteen minute break toward the end of his shift. Defendant's Motion for Summary Judgment [45] is DENIED.

SO ORDERED, this the 18th day of June, 2013.

    **/s/ Sharion Aycock**
    **U.S. DISTRICT JUDGE**